UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KAREN D. MCNEIL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 06-cv-02492 |
| | § | |
| BMC SOFTWARE, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM & ORDER

Both Plaintiff and Defendant have filed post-trial motions asking for relief from the jury's verdict. For the reasons that follow, Plaintiff's First Amended Motion for Judgment as a Matter of Law (Doc. No. 115) is **DENIED**. Defendant's Motion for Judgment Non Obstante Veredicto (Doc. No. 125) is **GRANTED IN PART**, and a **REMITTITUR** is **ORDERED** in the amount of $45,730.26, thereby reducing the amount Defendant owes Plaintiff to $24,269.74. Defendant's Motion for Judgment is **DENIED** in all other respects. Each party shall bear its own attorney's fees.

## I.    BACKGROUND

This action for race discrimination and breach of contract was tried to a jury beginning October 29, 2007. On November 7, 2007, after five days of testimony and approximately three days of deliberation, the jury returned a split verdict. It found that Defendant had not discriminated against Plaintiff based on her race, but that Defendant had breached its contract with Plaintiff by failing to pay her $20,000, the amount due to Plaintiff as the second installment of a sign-on bonus. For this contractual breach, the jury awarded damages of $70,000. The jury also

found that Plaintiff had not breached the contract by refusing to repay the first installment of that contract.

The jury's deliberations were not without apparent irregularities. The jury's foreperson submitted four questions (Doc. Nos. 118-21) to the Court expressing confusion about the Court's instructions as to the race discrimination claim.[1]  The fourth question (Doc. No. 121), submitted on the jury's second day of deliberations, expressed so much confusion about the definitions of words used in the Court's instructions that the Court adjourned the jury for the day so as to discuss the possibility of declaring a mistrial with the parties.

Both parties strongly disfavored a new trial, and instead agreed that the Court should re-charge the jury. The Court agreed, redrafted its jury instructions, revised those instructions after hearing argument from the parties about proposed changes, and on November 7, 2007, read the revised instructions to the jury.[2]

After receiving the revised jury instructions, the jury's foreperson sent a fifth question to the Court (mislabeled by the foreperson as "Question 4" (Doc. No. 122)) asking whether the jury could award more than the $20,000 that Plaintiff had requested on her breach of contract claim.

---

[1] The Court notes that the parties did not comply with its request for agreed jury instructions or, in the alternative, a draft of jury instructions that were agreed and competing drafts of those instructions as to which the parties disagreed. Instead, the parties submitted separate and sharply divergent sets of instructions, thereby requiring the Court to entertain argument on the matter and to draft its instructions largely from scratch. The Court further notes that the Fifth Circuit has not promulgated pattern jury instructions for race discrimination claims based on 42 U.S.C. § 1981, *see* United States Court of Appeals Fifth Judicial Circuit, Pattern Jury Instructions (Civil Cases) (2006), and that the instructions given in this case were derived from those of the Seventh Circuit after taking into account the relevant differences between Fifth Circuit and Seventh Circuit law.

[2] Having to re-charge a jury is both unfortunate and unusual, but it is also an accepted and sometimes necessary part of trial management. *See, e.g., United States v. Oliver*, 766 F.2d 252, 254 (6th Cir. 1985) ("[I]t is certainly proper for the court to recharge a jury to correct possible misunderstandings which could arise as a result of inadequately defining the elements constituting the crime charged, *United States v. Egenberg*, 441 F.2d 441 (2nd Cir. [1971]), *cert. denied*, 404 U.S. 994, 92 S.Ct. 530, 30 L.Ed.2d 546 (1971) . . . ."). The Fifth Circuit has allowed the practice so long as the additional instruction is not "unbalanced." *United States v. Meadows*, 598 F.2d 984, 990 (5th Cir. 1979) ("It is well-established that in giving additional instructions to a jury; particularly in response to inquiries from the jury, a court must be especially careful not to give an unbalanced charge."); *see also United States v. Dawes*, 222 Fed.App'x. 399, 404 (5th Cir. 2007) (unpublished opinion) ("[T]he necessity, extent, and character of any supplemental instructions to the jury are matters within the discretion of the district court." (*citing United States v. Garza*, 754 F.2d 1202, 1210 (5th Cir. 1985))); *United States v. Andrew,* 666 F.2d 915, 922 (5th Cir.1982) (same).

The Court heard argument from the parties about how to answer the question, and in response to Defendant's concern that the jury would return an excessive award, stated that any such problem would be addressed after trial by way of a remittitur.[3]  The Court then advised the jury that the damages award on Plaintiff's breach of contract claim is not limited to $20,000.

Later the same day, the third day of the jury's deliberations, the jury's foreperson communicated to the Court that the jury may be deadlocked, and asked the Court whether it could issue a statement encouraging the jury to complete its deliberations.[4]  In response, the Court read the "Modified Allen Charge" to the jury in an attempt to avoid deadlock.[5]  United States Court of Appeals Fifth Judicial Circuit, Pattern Jury Instructions (Criminal Cases) § 1.45 (2001), *available at* http://www.lb5.uscourts.gov/juryinstructions//crim2001.htm.

Within approximately four hours of hearing the "Modified Allen Charge," the jury returned its verdict, finding against Plaintiff on her race discrimination claim, against Defendant on its breach of contract claim, and in favor of Plaintiff on her breach of contract claim.[6]  The jury awarded damages to Plaintiff in the amount of $70,000, far in excess of the $20,000 specified as the amount owed to Plaintiff under her contract.

After trial, Plaintiff moved for judgment as a matter of law, and Defendant moved for judgment *non obstante veredicto*, or in the alternative, a remittitur of the jury's damages award.

---

[3] Plaintiff maintains that the Court stated that it would only consider a remittitur if the verdict exceeded $100,000. (Pl.'s Resp. to Def.'s Mot. J., Doc. No. 127, at 4). The Court did make such a statement, but the figure quoted, $100,000, was illustrative. In context, the Court clearly stated that Defendant's concern about an excessive jury verdict was misplaced because a remittitur could be ordered to correct the problem.

[4] This message from the foreperson did not come by way of a formal note, but instead was communicated orally to the Court through members of the Court's staff who were authorized to communicate with the jury. Upon receiving the communication, the Court immediately advised both parties of the foreperson's concern.

[5] The Court read the charge without significant deviation from the Fifth Circuit's Pattern Jury Instructions, except insofar as was necessary to conform the grammar of the charge to the parties and circumstances of this case.

[6] As explained in more detail below, this verdict is consistent with the second set of jury instructions. A jury that believed Plaintiff's allegation that she was wrongfully discharged but did not believe that she was so discharged because of her race would have found exactly as the jury did: against Plaintiff on her race discrimination claim, against Defendant on its contract claim, and for Plaintiff on her contract claim.

## II.    JUDGMENT AS A MATTER OF LAW

### A.    Legal Standards

Rule 50 of the Federal Rules of Civil Procedure provides for judgment as a matter of law ("JMOL") motions at the close of evidence and renewed JMOL motions after the verdict. The latter was formerly referred to as a motion for judgment *non obstante veredicto* ("JNOV"). Post-verdict motions styled as motions for JNOV, such as Defendant's, are properly treated as motions for JMOL. *Smith v. Louisiana Ladder Co.*, 237 F.3d 515, 525 n.2 (5th Cir. 2001) (Dennis, J., dissenting) (citing Fed. R. Civ. P. 50 Advisory Committee's Notes for the proposition, "If a motion is denominated a motion for directed verdict or for judgment notwithstanding the verdict, the party's error is merely formal. Such a motion should be treated as a motion for judgment as a matter of law in accordance with this rule.").

The requirements for JMOL are stringent:  generally, JMOL should only be granted if the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion. *Flowers v. S. Reg'l Physician Servs.,* 247 F.3d 229, 235 (5th Cir. 2001).    Under Federal Rule of Civil Procedure 50, "judgment as a matter of law is proper after a party has been fully heard by the jury on a given issue, [if] there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue." *Ford v. Cimarron Ins. Co.* 230 F.3d 828, 830 (5th Cir. 2000) (internal quotations omitted) (quoting *Foreman v. Babcock & Wilcox Co.,* 117 F.3d 800, 804 (5th Cir. 1997)).  In entertaining a Rule 50 motion, the Court must review all of the evidence in the record, and draw all reasonable inferences in favor of the nonmoving party. *Ellis v. Weasler Eng'g, Inc.,* 258 F.3d 326, 337 (5th Cir. 2001), *as amended,* (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)).    The court may not make credibility determinations or weigh the evidence, as

- 4 -

"[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves,* 530 U.S. at 150-151, (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250-51 (1986)). Thus, in reviewing the record as a whole, the court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Ellis,* 258 F.3d at 337 (citing *Reeves*, 530 U.S. at 151).

## B. Plaintiff's Motion for Judgment as a Matter of Law

Plaintiff's First Amended Motion for Judgment as a Matter of Law (Doc. No. 115) requests the entry of judgment in her favor on her race discrimination claim, arguing that Defendant failed to articulate a legitimate nondiscriminatory reason for constructively discharging Plaintiff.[7] (Pl's. First Am. Mot. J., Doc No. 115, at 1-2.)

Simply put, Plaintiff's motion for JMOL falls well short of the legal standards articulated above. As the Court explained orally at a hearing held December 18, 2007, a substantial portion of Defendant's case at trial was devoted to the introduction of evidence and testimony supporting the conclusion that Plaintiff was discharged solely for her poor job performance. Among the many pieces of such evidence was the testimony of Todd Reeves, Plaintiff's direct supervisor while employed by Defendant, and the testimony of Jerome Adams, who supervised Mr. Reeves and dealt directly with Plaintiff on some staffing and recruiting issues. Both men testified to Plaintiff's absences, inadequate reports, inability to meet the staffing and recruiting needs of Defendant's business units, and budget overruns, among other shortcomings. Defendant also maintained throughout the trial that Plaintiff left her job entirely voluntarily, an argument that, if accepted, would have relieved Defendant of any liability for discharge based on racial animus. Defendant supported that position with, among other evidence, the testimony of Mr. Reeves that

---

[7] Plaintiff's motion was actually submitted after closing arguments and then re-urged during oral argument after the trial. The motion therefore also requests an entry of judgment on the two contract claims. (Pl.'s First Am. Mot. J., Doc. No. 115, at 1.) The jury's verdict, which found in Plaintiff's favor on both claims, renders those requests moot.

he asked Plaintiff not to leave the company. Plaintiff herself confirmed the accuracy of Mr. Reeves' testimony on this point, although she disputed whether it accurately represented Defendant's true position at the time. This evidence may not be persuasive to every trier of fact, but it appears to have persuaded the jury in this case. More to the point, in the Court's judgment, a reasonable jury could surely have found Defendant's evidence establishing a nondiscriminatory reason for Plaintiff's discharge sufficient to find against Plaintiff. That is enough to defeat Plaintiff's motion for JMOL.[8]

---

[8] In her Response to Defendant's Motion for Judgment, Plaintiff also argues that the Court erred in not allowing her to proceed on her claim for "hostile work environment." (Doc. No. 127, at 1-2.) The Court ruled that Plaintiff could not continue with her claim for "hostile work environment" on October 31, 2007, explaining that Plaintiff had failed throughout the litigation to show that the alleged abusive behavior at Defendant's workplace rose to the level of a "hostile work environment." The Court also explained that Plaintiff had failed to plead a "hostile work environment" claim. The Court stands by those judgments for the following reasons.

The conduct complained of is insufficiently severe and pervasive to support a "hostile work environment" claim. Such a claim generally requires a showing of discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an objectively abusive working environment. *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 78 (1998); *Harris v. Forklift Systems,* 510 U.S. 17, 21 (1993); *Wallace v. Texas Tech University*, 80 F.3d 1042, 1049 n.9 (5th Cir. 1996). Plaintiff's allegations relate solely to the behavior of Jerome Adams, however, who was alleged to have acted with hostility towards Plaintiff on only a handful of occasions over a period of months, and whose behavior was described as being limited to yelling and intimidation without the use of racial slurs. Under the Fifth Circuit's jurisprudence, these facts are not severe or pervasive enough to support a "hostile work environment" claim. *See Wallace,* 80 F.3d at 1049-50 (affirming the granting of summary judgment to the defendant where the African-American plaintiff lacked specific evidence of racist remarks by his supervisor or anybody else, and where the defendant provided sworn statements from two of the supervisor's other direct reports stating that they had never heard the supervisor make such remarks).

In addition, the Court agrees with Defendant's position that Plaintiff failed to provide Defendant adequate notice of her claim for "hostile work environment." (*See* Def.'s Reply, Doc. No. 130, at 1-2.) Plaintiff mentioned such a claim only twice in the litigation. First, in her Complaint, paragraph 12 states, "Adams became more relentless in his agenda to create a hostile work environment," and "[Plaintiff] felt compelled to seek other career opportunities rather than subject herself to the hostile work environment" (Complaint, Doc. No. 1, at 3). Second, in her Response to Defendant's Motion for Summary Judgment, under a sub-heading reading, "Adams' conduct and Defendant's failure to take remedial measures is sufficient evidence to support a jury verdict against Defendant for a hostile work environment," Plaintiff wrote simply, "To eliminate redundancy, [Plaintiff] incorporates her argument in support of constructive discharge to prove she was subjected to a hostile work environment." (Doc. No. 54, at 22.) Plaintiff cited no cases discussing "hostile work environment" under 42 U.S.C. § 1981.

The Court does not believe that these two references, without more, are enough to provide Defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests," *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002). It is true that the standard of Federal Rule of Civil Procedure 8 is unexacting, but the Supreme Court has stated that the standard "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims" such that "attempted surprise" is avoided and "the gravamen of the dispute [is] brought frankly into the open for the inspection of the court." *Id* at 512-513. In this case, it cannot be said that Plaintiff put Defendant on notice of the grounds upon which any "hostile work environment" claim rested, that the gravamen of any such claim had been brought frankly into the open, or that surprise had been avoided. Plaintiff's Complaint mentioned "hostile work environment" in a paragraph that also mentioned constructive discharge, and that concluded with a statement of an element of constructive discharge (Complaint, Doc. No. 1, at 3

### C.    Defendant's Motion for Judgment Non Obstante Veredicto

Defendant's Motion for Judgment Non Obstante Veredicto (Doc. No. 125)[9] requests the entry of judgment in its favor on both breach of contract claims.  Defendant's argument is structured as a syllogism.  It argues that 1) the parties agree that either Plaintiff was constructively discharged or she left voluntarily;[10] 2) the jury found that she was not constructively discharged; it therefore follows that 3) Plaintiff left voluntarily, so Defendant should recover under the sign-on bonus contract and Plaintiff should not.  (Def.'s Mot. J., Doc No. 125, at 2.)  The error in Defendant's syllogism is with the first premise:  Plaintiff might have been separated from her employment under circumstances that are neither "constructive discharge," as defined in the Court's instructions, nor "voluntary" resignation.

The Court's jury instructions make this error clear.  Revised Jury Verdict Form Question Number 1 asks, "Having read the Court's Instruction No. 8, do you find by a preponderance of the evidence that [Defendant] constructively discharged [Plaintiff]?"  (Doc. 124, at 1.)  Instruction Number 8 of the Revised Jury Instructions defines the term "constructive discharge" to require that Defendant both "made [Plaintiff's] working conditions so intolerable that a reasonable person in [her] position would have had to quit," and did so because of her race.  (Doc. No. 116, at 9.)

("A reasonable person in the same position would have also felt compelled to do the same."))  Moreover, the Complaint's "Cause of Action" section lists constructive discharge, but does not mention "hostile work environment" as a separate claim.  (Doc. No. 1, at 4.)  Plaintiff's Response to Defendant's Motion for Summary Judgment does little to clarify the facts or grounds for any "hostile work environment" claim; on the contrary, by incorporating the facts and grounds for her constructive discharge claim wholesale, she can more accurately be said to have signaled to the Defendant that she intended to proceed on just one cause of action, constructive discharge.  Indeed, the "hostile work environment" sub-heading and the long discussion regarding constructive discharge both fall under the same heading, which reads in its entirety, "Termination *Claim*," singular.  (Pl.'s Resp. to Def.'s Mot. Summ. J., Doc. No. 54, at 7 (emphasis added).)  Finally, and importantly, at no point in the litigation did Plaintiff so much as list the elements of her "hostile work environment" claim or cite to a single case for the purpose of elucidating that claim, thereby making it very difficult for the Court to conclude that she gave adequate notice to Defendant of the grounds upon which any such claim rests.

[9] As noted above, Defendant's motion is properly treated as a motion for JMOL.

[10] The Court notes the irony of any argument that depends on an alleged agreement between parties in this hotly contested case, where, to put it mildly, agreements on even small matters have been few and far between.  This alleged agreement is no exception:  Plaintiff disputes its existence.  (Pl.'s Resp. to Def.'s Mot. J., Doc No. 127, at 3.)

- 7 -

The possible descriptions of Plaintiff's separation from her employment are therefore not limited only to "constructive discharge" and "voluntary" resignation: she may have been forced to quit for reasons other than her race, which would be neither "voluntary" nor "constructive discharge" as defined in the instructions. The jury's answer to Question Number 1 therefore shows only that Defendant did not meet *both* of the elements of constructive discharge as defined in the Court's instructions; it does not show that the jury found her to have left her job voluntarily. The jury may simply have believed that Defendant made Plaintiff's working conditions intolerable for reasons unrelated to Plaintiff's race.

Such a finding would be entirely plausible based on the evidence presented at trial. Defendant itself argued extensively at trial that while Mr. Adams had a pattern of confrontational and aggressive behavior towards his employees, his behavior was not exclusively aimed at African Americans. This argument was a major theme of Defendant's case, particularly in the testimony of Jennifer Teague and Ashley Fields, both of whom were directly supervised by Mr. Adams, and both of whom testified under oath to their belief that Mr. Adams' behavior was aggressive, and at times unpleasant, but not based on racial animus.

In the Court's judgment, a reasonable jury could have found that the evidence presented at trial established that Plaintiff's working conditions were intolerable for reasons unrelated to Plaintiff's race. Having so found, it would be natural for the jury to conclude that Plaintiff should recover on her contract claim. The Court's Instruction Number 9 Part 1 reads, "[Plaintiff] must prove by preponderance of the evidence that her employment by [Defendant] was not ended as a result of a voluntary resignation" (Doc. No. 116, at 10), a standard that, unlike the Court's instruction for "constructive discharge," does not require a finding of racial animus. It is also a standard that is easily met when an employee is forced to quit. Similarly, having found that

Plaintiff's working conditions were intolerable for reasons unrelated to Plaintiff's race, the jury would naturally have found that Defendant should not recover on its contract claim, as the Court's Instruction Number 9 Part 2 reads, "[Defendant] must prove by preponderance of the evidence that it did not force McNeil to resign" (Doc. No. 116, at 10). Like the previous standard, this standard can be satisfied without a finding of racial animus. In light of this plausible explanation of the jury's verdict, an explanation that conforms to the Court's instructions and the evidence at trial, the Court declines to set aside the jury's verdict on the two contract claims.

## III.    REMITTITUR

Defendant's Motion for Remittitur (Doc. No. 125) requests that the Court reduce the jury's award of $70,000 in damages to Plaintiff for her breach of contract claim to $24,269.74, which would include the $20,000 owed to Plaintiff under her contract plus interest from the date of the breach until the jury's verdict.[11]

Remittitur is appropriate where the jury's verdict exceeds the maximum amount recoverable at law. *Matador Drilling Co. v. Post*, 662 F.2d 1190, 1197 (5th Cir. 1981). In ordering a remittitur, the Court "has a wide range of discretion." *Concise Oil & Gas P'ship v. Louisiana Intrastate Gas Corp.*, 986 F.2d 1463, 1475 (5th Cir. 1993). That said, the Court has long considered the civil jury to be one of the most successful truth-seeking functions ever devised, if not the most successful, and it is well aware that, if judges are willing to set aside jury verdicts too readily, the entire rationale for the civil jury system is sharply attenuated. *See, e.g., Klumpe v. IBP, Inc.*, 309 F.3d 279, 293-94 (5th Cir. 2002) (Ellison, J., dissenting). The Court is therefore hesitant to step in and disrupt that process without strong reasons for doing so.

---

[11] Defendant's Motion for Judgment Non Obstante Veredicto and its Motion for Remittitur are both contained in Document Number 125, the full title of which is Defendant's Opposed Motion For Judgment Non Obstante Veredicto And, In The Alternative, Defendant's Opposed Motion For Remittitur.

In this case, however, the Court is bound by law to provide Defendant the relief it seeks. Jury verdicts on contract claims decided under Texas law may not exceed the "maximum legally cognizable recovery." *Matador Drilling Co.*, 662 F.2d at 1198. The parties appear to agree that, in light of the jury's verdict, Plaintiff is entitled to at least $20,000 as the second installment of her sign-on bonus contract, plus interest from the date of the breach until the date of the verdict. The parties disagree, however, about damages beyond that. Specifically, Plaintiff and Defendant disagree about whether Plaintiff is entitled to consequential damages from the breach. (*See* Pl.'s Resp. to Def.'s Mot. J., Doc No. 127, at 4.)

In an action for breach of contract, it is well settled that actual damages may be recovered when the loss is the "natural, probable, and foreseeable consequence of the defendant's conduct." *Mead v. Johnson Group, Inc.* 615 S.W.2d 685, 687 (Tex. 1981) (citing *Hadley v. Baxendale*, 9 Exch. 341, 354 (1854) for the proposition, "Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally; i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach."); *Hollywood Fantasy Corp v. Gabor*, 151 F.3d 203, 214 (5th Cir. 1998).

Plaintiff argues that the evidence she presented to the jury established significant consequential damages, including damages incurred in having to relocate after she was separated from her job, maintaining an unused second residence in the Houston area, and finding a new job, as well as various damages for her emotional stress.[12]   The Court does not doubt Plaintiff's

---

[12] Plaintiff's Response to Defendant's Motion for Judgment makes the claim that "[t]here was overwhelming evidence that [Plaintiff] suffered substantial damages because of the involuntary termination," but it provides no

sincerity about the hardships she has endured since leaving her job, but it cannot agree that the evidence presented at trial justifies the award of consequential damages. All of the consequential damages alleged by Plaintiff appear to be the consequence of her having been separated from her employment in what was obviously an upsetting manner. Defendant's liability, however, flows not from that separation *per se*, but from its failure to pay the money owed under Plaintiff's contract. The Court is unable to see the necessary nexus between Defendant's failure to pay Plaintiff $20,000 and Plaintiff's alleged consequential damages. On the contrary, Plaintiff's testimony at trial indicated that her damages – including those incurred as a result of relocating, maintaining a second home, finding a new job, and emotional distress – were all the product of her having to leave her job. Put another way, were Plaintiff to have remained employed (under more tolerable conditions) but simply not been paid the second installment of her sign-on bonus, the Court is confident that none of the damages allegedly proven at trial would have resulted. Without having established that nexus, the consequential damages Plaintiff alleges are not available to her, and $20,000, plus interest, is her maximum legally cognizable recovery. The Court must therefore order a remittitur of the jury's damages award.

As for the amount of the remittitur, Defendant has calculated the compounded interest from April 1, 2005, the date Plaintiff's breach of contract claim accrued, to November 7, 2007, the date of the jury's verdict, at the rate of 7.75%, to be $4,269.74. (Def.'s Mot. J., Doc. No. 125, at 3-4.) Plaintiff has not challenged this calculation in any of her pleadings or at any hearing. In the absence of any argument or law to the contrary, the Court accepts Defendant's calculation, and will enter a remittitur of $45,730.26, thereby reducing the amount owed by Defendant to Plaintiff to $24,269.74.

---

specifics as to what that evidence was or the amount of damages that evidence proved. (Doc. No. 127, at 4.) Plaintiff did, however, made oral arguments during a hearing held on December 18, 2007 about consequential damages, all of which the Court has considered in promulgating this Order.

## IV.    ATTORNEY'S FEES

In her Complaint, filed in July, 2006, Plaintiff requests the Court to "award [her] costs and attorney's fees."  (Doc. No. 1, at 5.)  With one exception in the eighteen months since then, Plaintiff has not renewed this request in any filing, motion, hearing, or trial proceeding, not even at the Court's pretrial conference on October 24, 2007, at which the parties discussed such matters as front pay, back pay, and bifurcation of the trial.  The one exception was a hearing held December 18, 2007, at which the Court inquired as to the parties' positions on the matter of fees. At that hearing, Plaintiff expressed her desire to recover fees, although in the month since then, Plaintiff has made no motion to that effect.  Not surprisingly, Defendant has consistently opposed the awarding of fees to Plaintiff, and it has indicated that, were the Court to consider such an award to Plaintiff for the contract claims, it would request the Court to consider a similar award to Defendant on the basis of the race discrimination claim.

Because neither party has properly moved for attorneys fees, the Court declines to make any such award.  The Court notes, but does not find, that any such motion would likely be futile at this point, as there is no evidence that Plaintiff has presented a claim for fees to Defendant as required by Texas Civil Practice & Remedies Code § 38.002(2), and the Court seriously doubts that Defendant could show Plaintiff's claim for race discrimination, although ultimately unsuccessful, to be groundless, frivolous, or the product of bad faith.

## V.    CONCLUSION

For the reasons set forth above, Plaintiff's First Amended Motion for Judgment as a Matter of Law (Doc. No. 115) is **DENIED**.  Defendant's Motion for Judgment Non Obstante Veredicto (Doc. No. 125) is **GRANTED IN PART**, and a **REMITTITUR** is **ORDERED** in the amount of

$45,730.26, thereby reducing the amount Defendant owes Plaintiff to $24,269.74.  Defendant's

Motion for Judgment is **DENIED** in all other respects.  Each party shall bear its own attorney's

fees.

    **IT IS SO ORDERED**.

    **SIGNED** at Houston, Texas, on this the 22nd day of January, 2008.

THE HONORABLE KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS
ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY
AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN
SENT ONE BY THE COURT.**